**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-307-MOC
(3:14-cr-229-MOC-DCK-11)**

| | |
|---|---|
| AHKEEM TAHJA MCDONALD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate Sentence under 28 U.S.C. § 2255, (Doc. No. 1). Also pending is the Government's Motion to Dismiss, (Doc. No. 3).

## I. BACKGROUND

Petitioner was indicted in the underlying criminal case for: Count (1), RICO conspiracy with overt acts including the shooting murder of Kwamne Clyburn (18 U.S.C. § 1962(d)); Count (2), murder in aid of racketeering activity and aiding and abetting the same for Clyburn's murder in violation of North Carolina General Statutes Section 14-17 (18 U.S.C. §§ 1959(a)(1) and 2); and Count (3) using or carrying a firearm during and in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence resulting in the death of Clyburn and aiding and abetting the same, with the crimes of violence being Counts (1) and (2) (18 U.S.C. § 924(c), (j)(1)). (3:14-cr-229 (CR), Doc. No. 477) (Third Superseding Bill of Indictment).

At trial, the Government presented "ample evidence" that Petitioner participated in Clyburn's murder:

> Specifically, McDonald was present at a meeting called by Cureton, during which the gang voted and agreed to murder Clyburn for his breach of gang protocol.

1

> Fudge testified that Cureton, Adoma, McDonald, and Clyburn left together, and minutes later Fudge heard gunshots in the park. Fudge went to the source of the sound and found Clyburn dead. Following the murder, Cureton, Adoma, and McDonald all admitted the crime to Fudge, with Cureton also implicating McDonald. Portions of Fudge's testimony was corroborated by other coconspirators, as well as relevant letters and the discovery of one of the murder weapons.

United States v. Adoma, 781 F. App'x 199, 208 (4th Cir. 2019).

In the jury instructions on Count (1), the Court addressed each of the alleged racketeering activities including Clyburn's murder in violation of § 14-17. (CR Doc. No. 899 at 296-300). In instructing the jury on Court (2), the Court referred to instructions that it had already provided with regards to § 14-17. (CR Doc. No. 899 at 310-11). With regards to Count (3), the Court instructed the jury that the relevant offense is the murder in aid of racketeering in Count (2) and stated *inter alia*:

> For you to find the … defendants guilty of [Count (3)], you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:
>
> One, **the defendants committed the offense charged in Count Two, that is, murder in aid of racketeering**. That offense is a crime of violence for purposes of this count;
>
> Two, that the defendant knowingly used a firearm during and in relation to such crime, or the defendant knowingly possessed a firearm in furtherance of such crime; and
>
> Three, that the defendant caused the death of a person through the use of a firearm in the course – in the course of violating 18, United States Code, Section 924(c).

(CR Doc. 899 at 312-13) (emphasis added).

A jury found Petitioner guilty of the conspiracy charge in Count (1) with a special finding that Petitioner's agreement included the "willful, deliberate and premeditated murder" of Clyburn; guilty of Count (2); and guilty of Count (3) with special findings that the firearm was brandished

2

and discharged, that Petitioner caused Clyburn's death through the use of the firearm, and that Clyburn's killing was with "malice aforethought." (CR Doc. No. 732 at 2-4).

The Court sentenced Petitioner to life imprisonment on Counts (1), (2), and (3), with the sentences for Counts (1) and (2) running concurrently and Count (3) running consecutively. (CR Doc. No. 842).

The Fourth Circuit Court of Appeals affirmed Petitioner's convictions in an opinion issued on July 30, 2019. United States v. Adoma, 781 F. App'x 199 (4th Cir. 2019) (finding, among other things, that Petitioner's motion for judgment of acquittal was properly denied because the jury considered the trial testimony and reasonably concluded that Petitioner was guilty of participating in Clyburn's murder, apparently resolving any credibility issues in the Government's favor). Petitioner did not seek certiorari review.

In his *pro se* § 2255 Motion to Vacate filed on May 29, 2020,[1] Petitioner argues that his § 924(c) conviction is invalid pursuant to United States v. Davis, 139 S.Ct. 2319 (2019) because it is not based on an offense that qualifies as a crime of violence under 924(c)'s force clause.[2]

The Government filed a Motion to Dismiss, (Doc. No. 3), arguing that the Motion to Vacate is procedurally barred, conclusory, and meritless because both RICO conspiracy and murder in aid of racketeering are crimes of violence under § 924(c)'s force clause.

Petitioner filed a Response, (Doc. No. 5), to the Motion to Dismiss arguing that he alerted appellate counsel to Davis but that counsel who failed to raise the issue. Petitioner also appears to

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Rule 3(d), Rules Governing § 2255 Proceedings in the United States District Courts (addressing inmate filings).

[2] Petitioner claims *verbatim*: "Under Davis v. U.S. Supreme Courts, RICO conspiracy is not considered a crime of violence under the residual clause for 924(c)." (Doc. No. 1 at 4). The Court has liberally construed this *pro se* claim. See generally Haines v. Kerner, 404 U.S. 519 (1972) (a *pro se* complaint, however inartfully pled, must be held to less stringent standards than formal pleadings drafted by lawyers).

3

Case 3:20-cv-00307-MOC   Document 9   Filed 01/11/21   Page 3 of 9

argue that the actual innocence exception to the procedural default rule applies because the evidence was insufficient to support his conviction. Petitioner alludes to a number of additional alleged errors, including that all three sentences should be vacated, that the jury instructions were insufficient, and that there were irregularities with regards to jurors.

The Government filed a Reply, (Doc. No. 6), arguing that Petitioner failed to overcome his procedural default of the Davis claim, he has failed to show that his claim has merit, and the new claims he attempts to raise are not properly before the Court and are procedurally defaulted and meritless.

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

As a preliminary matter, Petitioner's claim pursuant to United States v. Davis, 139 S.Ct. 2319 (2019) is procedurally defaulted from § 2255 review. "Habeas review is an extraordinary

4

remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). With regards to cause and prejudice, a petitioner must demonstrate: (1) the existence of cause for a procedural default that turns on something external to the defense; and (2) actual prejudice resulting from the errors of which he complains. United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray, 477 U.S. at 494). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray v. Carrier, 477 U.S. 478, 496 (1986). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

Petitioner failed to raise his Davis claim on direct appeal even though Davis was decided on June 24, 2019 while Petitioner's appeal was still pending. Petitioner attempts to avoid the

5

procedural default by alleging that appellate counsel's failure to raise the issue constitutes cause, and by asserting his actual innocence. Petitioner has failed to satisfy either of these exceptions to the procedural default rule. Petitioner's conclusory allegation of ineffective assistance of counsel is insufficient to satisfy the cause and prejudice standard. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). Petitioner fails to explain why counsel was deficient for declining to present the Davis claim and Petitioner is unable to demonstrate prejudice because that claim is meritless for the reasons discussed *infra*. Petitioner's reliance on actual innocence exception is unavailing because Petitioner merely argues that the evidence is insufficient to support his conviction, however, legal insufficiency falls short of the actual innocence standard. See Bousley, 523 U.S. at 623. Therefore, the § 2255 Motion to Vacate is procedurally defaulted, no exception applies, and the § 2255 Motion to Vacate will be dismissed.

Petitioner's attempt to raise new claims in his Response to the Motion to Dismiss will be rejected because Petitioner failed to properly present these claims to the Court for consideration. See generally Fed. R. Civ. P. 15(a) (addressing amendment of pleadings); Rule 2(b)-(c), Rules Governing § 2255 Proceedings (providing that a § 2255 motion "must" specify all grounds for relief, state fact supporting each ground, state the relief requested, be signed under penalty of perjury, and substantially follow the § 2255 form). The new claims that Petitioner attempts to raise in his Response are therefore dismissed.

Even if Petitioner's Davis claim were not procedurally defaulted from § 2255 review, it would be denied on the merits. Section 924(c) prohibits use or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime…." 18 U.S.C. § 924(c)(1). Under § 924(c), a crime is one of violence if it either "has as an element the use, attempted use, or threatened

6

use of physical force against the person or property of another," (the "force clause") or "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," (the "residual clause"). 18 U.S.C.A. § 924(c)(3)(A)-(B). In Davis, the Supreme Court held that § 924(c)'s residual clause is unconstitutionally vague. Therefore, in order for a § 924(c) conviction to remain valid, the predicate offense must qualify as a crime of violence under § 924(c)'s force clause.

In the instant case, the Court instructed the jury that the crime of violence underlying Count (3) is murder in aid of racketeering activity as charged in Count (2). (CR Doc. No. 899 at 311-12); see Weeks v. Angelone, 528 U.S. 225, 234 (2000) (the jury is presumed to have followed the court's instruction). The jury found that, in Count (3), Petitioner violated §§ 924(c) and (j) and in so doing, caused the death of Clyburn, and that Clyburn's killing was done with malice aforethought. (CR Doc. No. 732). Therefore, the question before the Court is whether the murder in aid of racketeering, based on violation of North Carolina's murder statute, is a crime of violence under § 924(c)'s force clause.[3] The Court easily concludes that it does.

North Carolina General Statutes § 14-17, subsection (a) defines first-degree murder as "[a] murder which shall be perpetrated by means of ... lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon

---

[3] The Court will not address whether the RICO conspiracy in Count (1) is a crime of violence under § 924(c)'s force clause in the interest of judicial economy. See, e.g., Hartley v. United States, 2020 WL 3196734 (W.D.N.C. June 15, 2020) (rejecting co-Defendant Hartley's Davis argument that his § 924(c) convictions are invalid because RICO conspiracy is not a crime of violence for purposes of § 924(c) because his § 924(c) convictions were predicated on both RICO conspiracy and murder in aid of racketeering).

7

shall be deemed to be murder in the first degree…" N.C. Gen. Stat. § 14-17(a) (2012).[4] Subsection (b) provides that, "[a] murder other than described in subsection (a) ... shall be deemed second degree murder." N.C. Gen. Stat. § 14-17(b) (2012). The Indictment does not specify whether the murder in aid of racketeering activity was based on first or second-degree murder under § 14-17. [CR Doc. 477 at 23]. Therefore, to address Petitioner's claim for relief under § 924(c), the Court will give Petitioner the benefit of the assumption that his predicate crime of violence was based on second-degree murder.

"North Carolina second-degree murder is 'the unlawful killing of a human being with malice but without premeditation and deliberation.'" United States v. Parrish, 767 F. App'x 440, 442 (4th Cir. 2019) (quoting State v. Thibodeaux, 352 N.C. 570, 532 S.E.2d 797, 806 (2000) (internal quotations omitted)). "[T]he element of malice in second-degree murder is provided by intentional conduct, [and] a defendant need only intend to commit the underlying act that results in death." Id. (quoting State v. Coble, 351 N.C. 448, 527 S.E.2d 45, 48 (2000)). "[U]nlawfully killing another human being requires the use of force capable of causing physical pain or injury to another person." In re Irby, 858 F.3d 231, 235 (4th Cir. 2017) (internal quotation marks omitted). "Force," as used in § 924(c)'s "force clause," means "a substantial degree of force" that is "capable of causing physical pain or injury to another person." United States v. Evans, 848 F.3d 242, 245 (4th Cir. 2017); see also United States v. Battle, 927 F.3d 160, 166 (4th Cir. 2019) ("[A] crime requiring the 'intentional causation' of injury requires the use of physical force.") (quoting United States v. Castleman, 572 U.S. 157, 170 (2014)). Because second-degree murder under § 14-17(b) requires the unlawful killing of a human being, the Court finds that it qualifies as a crime of

---

[4] This version of the statute was in effect from December 1, 2012 to August 22, 2013 and the murder at issue occurred on August 22, 2013.

violence under § 924(c). See Hartley v. United States, 2020 WL 3196734 (W.D.N.C. June 15, 2020) (denying co-Defendant Hartley's Davis claim because murder in aid of racketeering is a crime of violence); see also Ordonez-Vega v. United States, 2020 WL 7212582, at *6 (W.D.N.C. Dec. 7, 2020) (rejecting petitioner's claim that murder in aid of racketeering based on a North Carolina murder is not a predicate crime of violence under § 924(c) because both first-degree and second-degree murder under § 14-17 satisfy § 924(c)'s force clause); Umana v. United States, 229 F.Supp.3d 388 (W.D.N.C. 2017) (concluding that murder under North Carolina pursuant to § 14-17 (2007) substantially corresponds to, or is narrower than, the generic definition of murder and thus satisfies § 924(c)'s force clause). Therefore, Petitioner's conviction in Count (3) was based on a crime of violence pursuant to § 924(c)'s force clause and Petitioner's Davis claim fails on the merits.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate Sentence under 28 U.S.C. § 2255, (Doc. No. 16), is **DISMISSED** and **DENIED**.

2. Respondent's Motion to Dismiss, (Doc. No. 3), is **GRANTED**.

3. The Clerk is instructed to close this case.

Signed: January 11, 2021

Max O. Cogburn Jr
United States District Judge

9

Case 3:20-cv-00307-MOC   Document 9   Filed 01/11/21   Page 9 of 9